**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
No. __:____-CV-________

| | | |
|---|---|---|
| JOHN DORIUS,<br><br>Plaintiff,<br><br>v.<br><br>WAKEMED d/b/a WAKEMED HEALTH & HOSPITALS; KENDRA CATHARINE GREAVES; KIMBERLY ANNE GRABAU; and SHAY STURGILL,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **COMPLAINT AND DEMAND FOR JURY TRIAL**<br>(42 U.S.C. § 2000e et seq.) |

Plaintiff John Dorius ("Plaintiff"), by and through the undersigned counsel of record, hereby alleges as follows:

## NATURE OF THE ACTION

1. This action arises from sex-based harassment and retaliation Plaintiff experienced while employed by WakeMed, which does business as WakeMed Health & Hospitals ("WakeMed"). A female coworker, Defendant Kendra Greaves, sexually touched Plaintiff multiple times at work in a non-consensually manner, including by grabbing his crotch. Plaintiff reported the conduct to WakeMed. WakeMed failed to take the necessary corrective action, and after Plaintiff complained, he was subjected to retaliatory hostility, isolation, and changes to his work that continued until the conditions of his employment became intolerable. Plaintiff therefore resigned his position with WakeMed, effective December 8, 2025.

2. Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and under North Carolina common law for battery,

intentional infliction of emotional distress, negligent retention and supervision, wrongful discharge in violation of public policy, and negligent infliction of emotional distress.

## PARTIES

3. Plaintiff John Dorius is a citizen of the State of Washington, residing in Colbert, Spokane County, Washington. During the events alleged in this Complaint, Plaintiff lived and worked in North Carolina.

4. Defendant WakeMed is a North Carolina nonprofit corporation with its principal office at 3000 New Bern Avenue, Raleigh, Wake County, North Carolina, that does business as WakeMed Health & Hospitals. WakeMed operates a critical care transport service known as WakeMed Mobile. The EEOC charge described below identified the respondent as "WakeMed Mobile (WakeMed Health & Hospitals)." WakeMed employed Plaintiff at all relevant times.

5. WakeMed is an employer within the meaning of 42 U.S.C. § 2000e(b). Upon information and belief, WakeMed has employed more than 500 employees for each working day in each of twenty or more calendar weeks in the current and preceding calendar years.

6. Defendant Kendra Greaves ("Greaves") is, upon information and belief, a citizen and resident of North Carolina. At all relevant times, Greaves was employed by WakeMed and worked with Plaintiff as his coworker.

7. Defendant Kimberly Grabau ("Grabau") is, upon information and belief, a citizen and resident of North Carolina. At all relevant times, Grabau was employed by WakeMed in a supervisory or management capacity.

8. Defendant Shay Sturgill ("Sturgill") is, upon information and belief, a citizen and resident of North Carolina. At all relevant times, Sturgill was employed by WakeMed in a lead or senior employee capacity.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction over Plaintiff's Title VII claims under 28 U.S.C. § 1331 because they arise under the laws of the United States.

10. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a) because they are so related to the Title VII claims that they form part of the same case or controversy. All claims arise from the same workplace conduct, complaints, retaliation and resignation.

11. This Court also has original jurisdiction over all claims under 28 U.S.C. § 1332(a)(1). Plaintiff is a citizen of Washington. Upon information and belief, WakeMed is incorporated in North Carolina and has its principal place of business in North Carolina, and each individual Defendant is a citizen of North Carolina. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

12. Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged in this Complaint were committed in North Carolina, and under 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside in North Carolina and a substantial part of the events and omissions giving rise to the claims occurred in Wake County, North Carolina, within this District.

13. Assignment to the Western Division is proper under Local Civil Rule 40.1(c) because Plaintiff does not reside in this District and the first-named Defendant, WakeMed, has its principal office in Wake County.

## ADMINISTRATIVE EXHAUSTION

14. On or about May 31, 2026, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge No. 433-2026-03467, against

"WakeMed Mobile (WakeMed Health & Hospitals)," concerning the conduct described in this Complaint. On or about July 27, 2026, Plaintiff filed an amended charge under the same charge number.

15. On July 30, 2026, the EEOC issued a Notice of Right to Sue. Plaintiff, through counsel, received the Notice on July 30, 2026. A true and correct copy of the Notice is attached as Exhibit A.

16. Plaintiff filed this action within ninety days after receipt of the Notice of Right to Sue, as required by 42 U.S.C. § 2000e-5(f)(1). Plaintiff has satisfied all administrative prerequisites to bringing his Title VII claims.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment

17. Plaintiff is a licensed registered nurse and a National Registry Emergency Medical Technician-Paramedic. Plaintiff holds or has held professional certifications including ACLS, BLS, PALS, NRP, CFRN, and FEMA certifications.

18. WakeMed employed Plaintiff from approximately March 4, 2023, through December 8, 2025. Plaintiff worked first as a critical care paramedic and later as a critical care registered nurse with WakeMed Mobile.

19. Plaintiff performed his job competently and professionally throughout the course of his employment with WakeMed.

### B. Greaves's Unwelcome Sexual Touching

20. On or about August 2024, while Plaintiff was on duty on WakeMed premises, Greaves intentionally and without Plaintiff's consent slapped Plaintiff's buttocks and touched his crotch over his clothing.

21. On a separate occasion on or about August 2024, while Plaintiff was on duty on WakeMed premises, Greaves intentionally and without Plaintiff's consent grabbed Plaintiff's crotch over his clothing.

22. Video recordings depict the incident in which Greaves slapped Plaintiff's buttocks. Upon information and belief, the recordings were captured by WakeMed's surveillance cameras on WakeMed premises.

23. A coworker, Mr. Bret Parker, witnessed at least one additional incident on the same day in which Greaves slapped Plaintiff's buttocks.

24. Greaves's contact with Plaintiff was sexual in nature, unwelcome, and offensive. Plaintiff did not invite, consent to, or provoke such conduct.

25. Greaves directed this conduct at Plaintiff because he is a man. Plaintiff observed Greaves engage in similar sexual conduct toward other male coworkers, including physical simulation of sexual conduct toward Mr. Parker. Upon information and belief, other male employees experienced similar unwanted sexual conduct from Greaves.

26. Greaves engaged in this conduct openly in the workplace, in the presence of coworkers. Upon information and belief, before the August 2024 incidents, WakeMed knew or in the exercise of reasonable care should have known that Greaves engaged in sexually harassing conduct toward male coworkers at work.

**C. Plaintiff's Complaints and WakeMed's Failure to Act**

27. Plaintiff reported Greaves's conduct to WakeMed management and Human Resources. Plaintiff made his complaints in good faith and through the channels WakeMed's anti-harassment policies provided.

28. By no later than October 2024, WakeMed had actual notice that Greaves had engaged in unwelcome sexual conduct toward Plaintiff and other employees.

29. WakeMed maintained written policies prohibiting sexual harassment and retaliation.

30. Despite its notice and its own policies, WakeMed failed to: (a) investigate promptly and meaningfully; (b) failed to impose effective discipline on Greaves; and (3) failed to take reasonable steps to protect Plaintiff, prevent recurrence, or remedy the hostile environment.

31. Plaintiff participated in internal complaint and mediation processes convened by WakeMed concerning the harassment and the hostile and retaliatory conduct that followed his complaints. Those processes did not result in cessation of the conduct.

**D. Retaliation and the Continuing Hostile Environment**

32. After Plaintiff complained about Greaves's sexual conduct and participated in WakeMed's internal processes, Plaintiff was subjected to retaliatory treatment, including social exclusion, negative comments about his competence and professionalism made in front of coworkers, professional undermining, and changes to his scheduling, overtime, and work assignments.

33. Ms. Grabau, a supervisor or manager, yelled in front of coworkers that she would never work with Plaintiff, humiliating him and isolating him from his colleagues.

34. Upon information and belief, Grabau and Sturgill discouraged coworkers from associating or working with Plaintiff.

35. Coworkers became increasingly distant and unwilling to work with Plaintiff.

36. The retaliatory and hostile treatment began after Plaintiff's complaints and continued through Plaintiff's final weeks of employment in December of 2025. The hostile

environment that began with Greaves's sexual conduct continued, without effective remedy, through the end of Plaintiff's employment.

37. WakeMed knew or should have known of the retaliatory and hostile treatment, including because Grabau held a supervisory or management role and because Plaintiff raised the treatment in WakeMed's internal processes. WakeMed failed to take effective action to stop it.

**E. Constructive Discharge**

38. By December 2025, the combined effect of the sexual conduct, the retaliatory treatment, the isolation, and WakeMed's failure to act had made Plaintiff's working conditions intolerable.

39. Plaintiff resigned, effective December 8, 2025, because of those conditions. Given the circumstances, a reasonable person in Plaintiff's position would have felt compelled to resign.

**F. Plaintiff's Injuries**

40. As a result of Defendants' conduct, Plaintiff has suffered severe emotional distress, including post-traumatic stress disorder, anxiety, depression, humiliation, sleep disturbance, and a diminished capacity to perform clinical work.

41. Plaintiff has received psychiatric care, including from licensed mental health providers, and has been prescribed medication for these conditions.

42. Plaintiff has also suffered lost wages, lost benefits, lost professional opportunities, and injury to his professional reputation.

**FIRST CLAIM FOR RELIEF**

**Title VII: Sex-Based Hostile Work Environment, 42 U.S.C. § 2000e-2(a)(1)**

(*Against WakeMed*)

43. Plaintiff incorporates paragraphs 1 through 42 as if fully set forth herein.

44. Plaintiff, a man, was subjected to unwelcome conduct of a sexual nature, including Greaves's slapping of his buttocks and grabbing of his crotch at work.

45. The conduct occurred because of Plaintiff's sex.

46. The conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment. It involved physical, sexual contact with Plaintiff's genitals and buttocks, was physically threatening and humiliating, happened on more than one occasion, and was followed by continuing hostility that WakeMed failed to remedy through the end of Plaintiff's employment in December 2025.

47. The harassment is imputable to WakeMed. WakeMed knew or should have known of the harassment, including through Plaintiff's complaints and its own surveillance recordings, and failed to take prompt and effective action reasonably calculated to end it.

48. As a direct and proximate result, Plaintiff suffered damages, including emotional distress and lost wages and benefits.

## SECOND CLAIM FOR RELIEF

### Title VII: Retaliation, 42 U.S.C. § 2000e-3(a)

(*Against WakeMed*)

49. Plaintiff incorporates paragraphs 1 through 48 as if fully set forth herein.

50. Plaintiff engaged in protected activity by opposing Greaves's sexual conduct, which he reasonably believed constituted sex discrimination prohibited by Title VII, through complaints to WakeMed management and Human Resources and participation in WakeMed's internal complaint and mediation processes.

51. WakeMed knew of Plaintiff's protected activity.

52. After and because of his protected activity, Plaintiff was subjected to materially adverse treatment, including changes to his scheduling, overtime, and work assignments; a supervisor's public declaration that she would never work with him; efforts by Grabau and Sturgill to discourage coworkers from working with him; social exclusion; and negative comments about his competence made in front of coworkers.

53. This treatment, individually and collectively, was severe or pervasive enough that it would dissuade a reasonable worker from making or supporting a charge of discrimination.

54. The retaliatory treatment is attributable to WakeMed because it was carried out in part by a WakeMed supervisor or manager, and because WakeMed knew or should have known of it and failed to take effective action to stop it.

55. The close sequence between Plaintiff's complaints and the onset of the retaliatory treatment, and the continuation of that treatment through December 2025, support the inference that WakeMed retaliated against Plaintiff because of his protected activity.

56. As a direct and proximate result, Plaintiff suffered damages, including emotional distress and lost wages, overtime, and benefits.

**THIRD CLAIM FOR RELIEF**

**Title VII: Constructive Discharge, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a)**

(*Against WakeMed*)

57. Plaintiff incorporates paragraphs 1 through 56 as if fully set forth herein.

58. WakeMed subjected Plaintiff to, and failed to remedy, sex-based harassment and retaliation after receiving notice of it.

59. The discriminatory and retaliatory conditions became so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

60. Plaintiff resigned, effective December 8, 2025, because of those conditions.

61. As a direct and proximate result, Plaintiff suffered economic and noneconomic damages, including lost wages and benefits.

## FOURTH CLAIM FOR RELIEF

**Battery**

(*Against Greaves*)

62. Plaintiff incorporates paragraphs 1 through 61 as if fully set forth herein.

63. Greaves intentionally touched Plaintiff in a harmful and offensive manner, including slapping his buttocks and touching and grabbing his crotch, without his consent.

64. The touching offended a reasonable sense of personal dignity.

65. As a direct and proximate result, Plaintiff suffered humiliation, severe emotional distress, and other damages to be proven at trial.

## FIFTH CLAIM FOR RELIEF

**Intentional Infliction of Emotional Distress**

(*Against Greaves*)

66. Plaintiff incorporates paragraphs 1 through 65 as if fully set forth herein.

67. Greaves's repeated, nonconsensual sexual touching of Plaintiff's genitals and buttocks in the workplace was extreme and outrageous conduct that exceeds all bounds of decency tolerated in a civilized community.

68. Greaves intended to cause Plaintiff severe emotional distress or acted with reckless indifference to the likelihood that her conduct would cause severe emotional distress.

69. Plaintiff suffered severe emotional distress, including post-traumatic stress disorder, anxiety, and depression, which have required psychiatric treatment and medication.

70. Greaves's conduct was a proximate cause of Plaintiff's severe emotional distress and other damages to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### Negligent Retention and Supervision

(*Against WakeMed*)

71. Plaintiff incorporates paragraphs 1 through 70 as if fully set forth herein.

72. WakeMed owed a duty to exercise reasonable care in supervising its employees and in retaining employees whose conduct posed a foreseeable risk of harm to others.

73. Greaves committed tortious acts against Plaintiff, including battery, in the course of her work with WakeMed.

74. Greaves was unfit for her position by reason of her practice of unwanted sexual conduct toward male coworkers at work.

75. Before the August 2024 incidents, WakeMed knew or in the exercise of reasonable care should have known of Greaves's unfitness, because Greaves engaged in such conduct openly in the workplace in the presence of coworkers. By no later than October 2024, WakeMed had actual notice of the conduct.

76. WakeMed failed to exercise reasonable care in supervising and retaining Greaves. It did not take reasonable steps before August 2024 to prevent the conduct, and after receiving actual notice it retained Greaves without effective discipline or other corrective action, leaving Plaintiff to continue working in a hostile environment. These actions constitute a breach of WakeMed's duty to exercise reasonable care.

77. WakeMed's negligence in supervising and retaining Greaves was a proximate cause of Plaintiff's injuries and damages.

## SEVENTH CLAIM FOR RELIEF

**Wrongful Discharge in Violation of North Carolina Public Policy**

(*Against WakeMed*)

78. Plaintiff incorporates paragraphs 1 through 77 as if fully set forth herein.

79. It is the public policy of North Carolina to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement on account of sex by employers which regularly employ fifteen or more employees. N.C. Gen. Stat. § 143-422.2(a).

80. WakeMed regularly employs fifteen or more employees.

81. WakeMed subjected Plaintiff to sex-based harassment and, after Plaintiff complained, permitted discriminatory and retaliatory conditions to continue until his working conditions became intolerable.

82. WakeMed constructively discharged Plaintiff, effective December 8, 2025, on account of his sex and because he opposed sex-based harassment, in violation of the public policy of North Carolina.

83. As a direct and proximate result, Plaintiff suffered lost wages, lost benefits, lost professional opportunities, emotional distress, and other damages.

## EIGHTH CLAIM FOR RELIEF

**Intentional Infliction of Emotional Distress**

(*Against Grabau, Sturgill, and WakeMed*)

84. Plaintiff incorporates paragraphs 1 through 83 as if fully set forth herein.

85. After Plaintiff reported being sexually touched by a coworker, Grabau, a supervisor or manager, yelled in front of coworkers that she would never work with Plaintiff, and Grabau and Sturgill encouraged coworkers to shun and refuse to work with him.

86. Grabau and Sturgill engaged in this conduct knowing that Plaintiff had reported sexual misconduct, for the purpose of isolating and punishing him for doing so.

87. Considered in context, including the position of authority Grabau held, Plaintiff's vulnerability as the reporting victim of sexual touching, and the sustained campaign of isolation that followed, this conduct was extreme and outrageous.

88. Grabau and Sturgill intended to cause Plaintiff severe emotional distress or acted with reckless indifference to the likelihood that their conduct would cause severe emotional distress.

89. WakeMed is liable for this conduct because Grabau and Sturgill acted within the course and scope of their employment and, upon information and belief, WakeMed authorized or ratified the conduct by knowing of it and failing to take any corrective action.

90. Plaintiff suffered severe emotional distress as a proximate result of this conduct.

## NINTH CLAIM FOR RELIEF

### Negligent Infliction of Emotional Distress (Pleaded in the Alternative)

(*Against WakeMed*)

91. Plaintiff incorporates paragraphs 1 through 90 as if fully set forth herein.

92. In the alternative to the intentional-conduct claims, WakeMed negligently failed to respond reasonably to Plaintiff's reports of sexual touching and to the hostile and retaliatory treatment that followed and negligently failed to supervise and correct the conduct of its employees.

93. WakeMed had a duty of reasonable care to its employees, and it was reasonably foreseeable to WakeMed that its negligent conduct would cause Plaintiff severe emotional distress.

94. WakeMed's negligent conduct caused Plaintiff severe emotional distress, including post-traumatic stress disorder, anxiety, and depression, diagnosed and treated by mental health professionals.

## PUNITIVE DAMAGES

95. Plaintiff incorporates paragraphs 1 through 94 as if fully set forth herein.

96. WakeMed engaged in the discriminatory and retaliatory practices alleged above with malice or with reckless indifference to Plaintiff's federally protected rights, including by failing to act after receiving notice of sexual touching documented on its own surveillance recordings. Plaintiff is entitled to punitive damages on his Title VII claims under 42 U.S.C. § 1981a(b)(1).

97. On his state-law claims, Plaintiff seeks punitive damages under N.C. Gen. Stat. § 1D-15 against Greaves, Grabau, and Sturgill, whose conduct was willful, wanton, or malicious, and against WakeMed, whose officers, directors, or managers, upon information and belief, participated in or condoned the conduct giving rise to Plaintiff's claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment for Plaintiff and against Defendants on the claims asserted against each of them;

B. Award Plaintiff back pay, front pay, lost benefits, and other equitable relief under 42 U.S.C. § 2000e-5(g);

C. Award Plaintiff compensatory damages under 42 U.S.C. § 1981a(a)(1) and North Carolina law, including damages for emotional distress, humiliation, reputational harm, and medical expenses,

D. Award Plaintiff punitive damages under 42 U.S.C. § 1981a(b)(1) and N.C. Gen. Stat. § 1D-15;

E. Award Plaintiff his reasonable attorney's fees and costs under 42 U.S.C. § 2000e-5(k) and as otherwise authorized by law;

F. Award total damages for the claims above (A-E) in the amount of $1,000,000 (one-million dollars and zero cents);

G. Award pre-judgment and post-judgment interest as allowed by law; and

H. Grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

This the 27th day of October, 2026.

/s/ Benjamin Tyler McLawhorn
Benjamin Tyler McLawhorn
The Law Offices of Benjamin T. McLawhorn
155 Parkway Office Court, Suite 200
Cary, North Carolina 27518
(919) 495-4551
Fax (919) 646-4032
ben@mclawfirmnc.com
State Bar No. 53821
Local Civil Rule 83.1(d) Attorney for Plaintiff

/s/ William D’Angelo III
William D’Angelo III
Pixel and Quill Law
110 Via Ithaca
Newport Beach, California 92663
(949) 633-0879
bill@pixelquilllaw.com
California State Bar No. 192161
Attorney for Plaintiff
**Notice of Special Appearance pursuant to Local Civil Rule 83.1(e) to be filed**

**EXHIBIT A**

Notice of Right to Sue, EEOC Charge No. 433-2026-03467, issued July 30, 2026